[No. C010845. Third Dist. Feb. 24, 1992.]

JENNET STEBBINS, Plaintiff and Appellant, v.
LOUIS GONZALES, Defendant and Respondent.

RALPH LEE WHITE, Plaintiff and Appellant, v.
LOUIS GONZALES, Defendant and Respondent.

COUNSEL

Jennet Stebbins, in pro. per., Meyer & Mitchell, Herman C. Meyer and Michael F. Babitzke for Plaintiffs and Appellants.

Olson, Connelly, Hagel, Fong & Leidigh and George Waters for Defendant and Respondent.

OPINION

**PUGLIA, P. J.**—This is an appeal from the judgment in consolidated contests of an election held November 6, 1990, for the office of Trustee,

Area Number 2, Stockton Unified School District. On November 30, 1990, the San Joaquin County Registrar of Voters certified the results of the election indicating defendant Louis Gonzales received the highest number of votes and Jennet Stebbins and Ralph Lee White respectively received the second and third highest numbers of votes. A recount was completed on December 21, 1990, and confirmed those results. Thereafter Jennet Stebbins timely filed a contest naming Gonzales as defendant. (Elec. Code, § 20051; all statutory references to sections of an undesignated code are to the Elections Code.) Ralph Lee White also timely filed a contest and named Gonzales and Stebbins as defendants.[1] Before trial the two contests were consolidated for all purposes.

The trial court found 12 votes cast for Gonzales were illegal and that Stebbins had received the highest number of legal votes. However, the trial court did not declare Stebbins elected (see § 20087); rather the court annulled the election, declared the contested seat vacant and ordered a new election. Both contestants appeal. White's appeal challenges only the trial court's denial of his request for attorney fees.

■ Preliminarily, we deal with Gonzales's assertion that by failing to include a reporter's transcript, Stebbins has not carried her burden of furnishing a record adequate to make out her contentions of error on appeal. The record consists of the clerk's transcript. It includes the trial court's written findings of fact, conclusions of law and judgment. (See § 20086.) Stebbins does not challenge the sufficiency of the evidence to support the findings of fact. As will appear, Stebbins's contention is, essentially, that the findings of fact do not support the judgment. The record on appeal is adequate to review that contention.

Stebbins contends section 20087 requires the trial court to declare her elected as the recipient of the greatest number of legal votes. We shall conclude the trial court erred in annulling the election and not declaring Stebbins elected. We shall further conclude the court properly denied White's request for attorney fees.

The trial court found that the election was certified on November 30, 1990, a recount was completed on December 21, 1990, and that Gonzales received 912 votes, Stebbins 905 and White 875. The court found five of the votes for Gonzales were cast by people not eligible to vote and were therefore illegal. ■ The court also found seven absentee ballots for Gonzales, although cast by eligible voters, did not comply with the procedures applicable to absentee ballots. (See §§ 1009, 1013.) Although the court

---

[1]White also named the County of San Joaquin and the Stockton Unified School District as defendants. They were dismissed before trial.

characterized these seven votes as "invalid," it correctly recognized that they were illegal within the meaning of section 20021, subdivision (d).[2] (See *Bush* v. *Head* (1908) 154 Cal. 277, 281-282 [97 P. 512]; *Hardeman* v. *Thomas* (1989) 208 Cal.App.3d 153, 168 [256 Cal.Rptr. 158].) As indicated before, the court's findings are not challenged.

The rejection of 12 illegal votes cast for Gonzales reduced Gonzales's total to 900 and gave Stebbins, with 905, the highest total vote. In its written decision, the court recognized section 20087 requires that if "another person than the defendant has the highest number of legal votes, the court shall declare that person elected."[3] Nevertheless, the court declined to do so, stating that its decision to annul the election and order a new one was based upon *Hardeman* v. *Thomas, supra,* 208 Cal.App.3d 153. The court explained: "Elections Code Section 20021 defines illegal votes as including both those cast by persons not privileged to vote and votes not entitled to be counted because not cast in the manner provided by law. [¶] Although this Court has labeled votes as being illegal or invalid, all votes so noted are actually illegal and cannot be counted. However, this Court has used the term 'invalid' to denote those votes in which the voter was privileged to vote, but the vote could not be counted because it was not cast in the manner provided by law. The reason for the differentiation is that there would be grounds for declaring the second place finisher as the winner if a sufficient number of votes were actually 'illegal' since Defendant will never get those votes. On the other hand, it can be presumed that the invalid votes would actually be revoted for the defendant in a valid manner. To do otherwise would be to defranchise [*sic*] qualified voters who made honest mistakes involving absentee ballots. Unfortunately, with the increasing widespread use of absentee voting, and the necessary technical requirements involved, it is reasonable to assume that a significant number of nonconforming ballots will always be submitted."

An election may be contested on the grounds that illegal votes were cast. (§ 20021, subd. (d).) Illegal votes are those "cast by persons not privileged to vote [or] . . . not entitled to be counted because not cast in the manner provided by law." (*Bush* v. *Head, supra,* 154 Cal. at pp. 281-282; *Hardeman* v. *Thomas, supra,* 208 Cal.App.3d at p. 168.)

 Section 20087 is mandatory. (See § 11.) Where it can be determined who received the highest number of legal votes, a trial court in an election

---

[2] Section 20021 provides in relevant part: "Any elector of a county, city, or any political subdivision of either may contest any election held therein for any of the following causes: . . . [¶] (d) That illegal votes were cast."

[3] Section 20087 provides: "If in any election contest it appears that another person than the defendant has the highest number of legal votes, the court shall declare that person elected."

contest has no authority to take any action other than declaring elected the person with the most legal votes. This is consistent with the rule that an election will not be annulled if it can be confirmed on any reasonable basis. (*Wilks* v. *Mouton* (1986) 42 Cal.3d 400, 404 [229 Cal.Rptr. 1, 722 P.2d 187]; *Davis* v. *County of Los Angeles* (1938) 12 Cal.2d 412, 426-427 [84 P.2d 1034].)

*Hardeman* v. *Thomas, supra,* 208 Cal.App.3d 153, upon which the trial court based its decision, is inapposite. In *Hardeman* an election contest was brought on grounds that a number of absentee ballots were illegal. (208 Cal.App.3d at pp. 157, 163-165.) The trial court found some of the votes cast were illegal, and annulled the election and ordered a new one. (*Id.* at p. 165.) The contestant appealed on the grounds he had received the largest number of legal votes and was therefore entitled under section 20087 to be declared elected. (208 Cal.App.3d at p. 172.)

The court of appeal affirmed, concluding the trial court's remarks indicated it was not convinced that it "appear[ed]" the contestant received the highest number of legal votes within the meaning of section 20087. The trial court had been unable to determine for whom a significant number of the illegal votes had been cast. (208 Cal.App.3d at pp. 173, 199.) Section 20087 therefore simply did not apply. (208 Cal.App.3d at pp. 173-174.)

In the present case there is no such confusion or lack of certainty. The trial court found "a total of five illegal votes and seven invalid ones" were cast for defendant and "cannot now be counted," leaving him a "total [of] 900 votes and plac[ing] him in second place behind contestant JENNET STEBBINS." Of the seven absentee votes described by the court as "invalid," six were disallowed for lack of a declaration of residency and identification due to failure of the voter to sign the identification envelope. (§§ 1009, 1015.)[4] The seventh "invalid" vote was disallowed because the voter's wife personally delivered the completed absentee ballot to the polling place although the

---

[4]Section 1009 provides "The identification envelope shall contain the following: [¶] (a) A declaration, under penalty of perjury, stating that the voter resides within the precinct in which he or she is voting and is the person whose name appears on the envelope. [¶] (b) The signature of the voter. [¶] (c) The residence address of the voter as shown on the affidavit of registration. [¶] (d) The date of signing. [¶] (e) A notice that the envelope contains an official ballot and is to be opened only by the canvassing board. [¶] (f) A warning plainly stamped or printed on it that voting twice constitutes a crime. [¶] (g) A statement that the voter has neither applied, nor intends to apply, for an absent voter's ballot from any other jurisdiction for the same election."

Section 1015 provides in part: "Upon receipt of the absentee ballot the elections official shall compare the signature on the envelope with that appearing on the affidavit of registration and, if they compare, deposit the ballot, still in the identification envelope, in a ballot container in his or her office. A variation of the signature cause by the substitution of initials

voter was physically able to do so. (§ 1013.)[5] These votes were illegal within the meaning of section 20021, subdivision (d) because "not cast in the manner provided by law." (*Bush* v. *Head, supra,* 154 Cal. at pp. 281-282; Hardeman v. *Thomas, supra,* 208 Cal.App.3d at p. 168.)

Gonzales argues section 20086 supports the trial court's decision. That section provides that after hearing the election contest the trial court "shall pronounce judgment . . . , either confirming or annulling and setting aside the election."[6] Gonzales contends a trial court is therefore authorized in an election contest either to confirm or annul the election.

Section 20086 sets forth the remedies available in, not the grounds for, an election contest, and then it does not prescribe what remedy is proper in particular circumstances. We construe a statute with reference to the system of law of which it is a part (*In re Michael G.* (1988) 44 Cal.3d 283, 296 [243 Cal.Rptr. 224, 747 P.2d 1152]; *People* v. *Mackabee* (1989) 214 Cal.App.3d 1250, 1261 [263 Cal.Rptr. 183]) and avoid adopting an interpretation which requires ignoring another statute. (*Anson* v. *County of Merced* (1988) 202 Cal.App.3d 1195, 1202 [249 Cal.Rptr. 457]; *Bank of America* v. *Cory* (1985) 164 Cal.App.3d 66, 75 [210 Cal.Rptr. 351].) Section 20086 does not, as Gonzales would have it, authorize the trial court in an election contest to annul an election and order a new one where, as here, it appears the contestant has received the highest number of legal votes. The interpretation of section 20086 for which Gonzales argues interjects an element of whimsy

for the first or middle name, or both, shall not invalidate the ballot. If the ballot is rejected because the signatures do not compare, the envelope shall not be opened and the ballot shall not be counted. The cause of the rejection shall be written on the face of the identificaion envelope."

[5]Section 1013 provides: "All absentee ballots cast under the provisions of this division shall be voted on or before the day of the election. After marking the ballot, the absent voter shall either (1) return the ballot by mail or in person to the official from whom it came or (2) return the ballot in person to any member of a precinct board at any polling place within the jurisdiction. However, an absent voter who, because of illness or other physical disability, is unable to return the ballot, may designate his or her spouse, child, parent, grandparent, grandchild, brother, or sister to return the ballot to the official from whom it came or to the precinct board at any polling place within the jurisdiction. The ballot must, however, be received by either the official from whom it came or the precinct board before the close of the polls on election day. [¶] The official shall establish procedures to insure the secrecy of any ballot returned to a precinct polling place. [¶] The provisions of this section are mandatory, not directory, and no ballot shall be counted if it is is not delivered in compliance with this section."

[6]Section 20086 provides: "The court shall continue in special session to hear and determine all issues arising in contested elections. After hearing the proofs and allegations of the parties and within 10 days after the submission thereof, the court shall file its findings of fact and conclusions of law, and immediately thereafter shall pronounce judgment in the premises, either confirming or annulling and setting aside the election. The judgment shall be entered immediately thereafter."

into the statute and ignores the mandatory language of section 20087. It is therefore rejected.

■ Gonzales contends that Stebbins's appeal is moot because a new election purportedly has been held. Nevertheless, since the trial court erred in annulling the election and in not declaring Stebbins elected, a new election should not have been held. If one was held, the winner of that election does not lawfully hold the office. (See *Keane v. Smith* (1971) 4 Cal.3d 932, 938 [95 Cal.Rptr. 197, 485 P.2d 261].) This appeal therefore is not moot.

■ White challenges the trial court's denial of his request for attorney fees. He contends he could show entitlement to these fees under Code of Civil Procedure section 1021.5 and that the trial court erred in denying his request without holding a hearing. In relevant part Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . . ."

White's claim fails because he is not a "successful party" within the meaning of Code of Civil Procedure section 1021.5. In his statement of election contest filed with the county clerk (§ 20050) White alleges illegal votes were cast for Gonzales, "which votes, if taken from him, will reduce the number of his legal votes below the number of legal votes given to [White] for the same office, or alternatively, a different candidate would be elected." As relief White asked only that the "Election certification be set aside and new special election be ordered." In his posttrial brief White "concur[red] with the trial court's analysis and agree[d] that a new election is not only appropriate, but mandated in the event the trial court agrees with [White] that at least two (2) of the remaining seven (7) ballots [ultimately characterized by the court as "invalid"] should be thrown out."[7]

Since we reverse the judgment to the extent it annuls the election and orders a new one and that is the only relief White sought in his contest, White is not a "successful party" in this action within the meaning of Code of Civil Procedure section 1021.5. Furthermore, it would be inaccurate to characterize the trial court's ruling, unsupported as it is by its findings of fact and contrary to the mandate of section 20087, although nevertheless actively

---

[7]The trial court apparently had provisionally indicated that if it found Gonzales had not received the highest number of legal votes it would, pursuant to *Hardeman v. Thomas, supra,* 208 Cal.App.3d 153, set aside the election and order a new one.

sought and encouraged by White, as enforcing an important public right or conferring a significant public benefit within the meaning of Code of Civil Procedure section 1021.5.

■ Moreover, White did not make the motion required by Code of Civil Procedure section 1021.5. White contends he did not have time to make a formal motion because 15 days' notice is required (Code Civ. Proc., § 1005, subd. (b)), and a judgment in an election contest must be appealed within 10 days of issuance. (§ 20116.) However, White could have requested an order shortening time for the hearing but did not do so. (See Code Civ. Proc., § 1005, subd. (b).) In any event, a motion for attorney fees under Code of Civil Procedure section 1021.5 is collateral to the underlying action and may therefore be brought even after the judgment is final. (*Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 226-227 [226 Cal.Rptr. 265].)

To the extent the judgment annuls the election and declares the contested office vacant and orders a new election, it is reversed. To the extent the judgment annuls the certificate of election issued to Gonzales, denies White's request for attorney fees, and awards costs to Stebbins and White, it is affirmed. The trial court is directed to issue a judgment declaring Stebbins elected to the office of Trustee, Area Number 2, of the Stockton Unified School District. Stebbins is to recover her costs on appeal from Gonzales. White and Gonzales are to bear their own costs on appeal.

Blease, J., and Raye, J., concurred.

A petition for a rehearing was denied March 19, 1992, and respondent's petition for review by the Supreme Court was denied May 14, 1992.