Filed 12/24/15  Certified for Publication 1/11/16 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AURORA CLARK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JOHN MCCANN,<br><br>    Defendant and Respondent;<br><br>MICHAEL VU, as Registrar of Voters, etc.,<br><br>    Real Party in Interest and Respondent. | D067918<br><br><br><br>(Super. Ct. No. 37-2015-00000121-<br> CU-PT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.


Schwartz Semerdjian Cauley & Moot, John S. Moot and Owen M. Praskievicz for Plaintiff and Appellant.

Bell, McAndrews & Hiltachk, Brian T. Hildreth, Charles H. Bell, Jr., and Paul T. Gough for Defendant and Respondent.

Thomas E. Montgomery, County Counsel, and Timothy M. Barry, Chief Deputy County Counsel, for Real Party in Interest and Respondent.

Aurora Clark (Contestant) appeals the trial court's denial of her election contest challenging 12 uncounted ballots in a close race for city council. This appeal principally concerns the handling of provisional ballots where the voter does not provide a current residence address on the ballot envelope. Because we agree with the trial court that the elections official did not abuse his discretion, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are essentially undisputed. In November 2014, a run-off election (the Election) was held for a seat on the Chula Vista City Council. In early December 2014, Michael Vu, the San Diego County Registrar of Voters (the Registrar), certified the official canvas results showing that John McCann was the winner with 18,448 votes—two more than Steve Padilla, who received 18,446 votes.

Contestant, a registered voter in Chula Vista, filed an election contest under Elections Code section 16100, subdivisions (e), (f), and (g).[1] Contestant initially challenged 15 uncounted ballots. She alleged that each of the contested ballots (provisional or mail) was cast by a properly registered voter in Chula Vista and should have been counted. The parties engaged in discovery. By the time of trial, Contestant challenged only 12 ballots, which were excluded from the Registrar's count for the following reasons:

_____

[1] All further statutory references are to the Elections Code unless otherwise stated.

2

• Ten individuals listed a post office (P.O.) box, a business address, or a nonexistent address as their residence address on a provisional ballot envelope. Sometimes the nonexistent addresses bore similarities to actual residential addresses. For example, one voter had recently moved and she wrote "1568 Park View Way" instead of her aunt's actual address, "1658 View Park Way." None of the addresses written on the provisional ballot envelopes were valid residential addresses. Otherwise, nine were registered voters and eligible to vote in the Election. One individual (Ryan M.) had used a business address on his 2014 voter registration form and as a result, was not registered to vote. Ryan M. never provided a valid residential address on a new voter registration form, but Contestant appears to contend that he should be deemed registered based on her argument that a homeless person living in a city park can register to vote.

• Two individuals returned a vote-by-mail (VBM) ballot, but had never applied to be VBM voters. They handed in a VBM ballot to a polling location, signed in their own names. Evidence was not presented on exactly how they obtained VBM ballots, but they had household members who were registered VBM voters. Otherwise, these individuals were registered voters and eligible to vote in the Election.

Of the total ballots cast by Chula Vista voters in the Election, 64.5 percent were VBM and 6.55 percent were provisional. Of the provisional ballots, 94.1 percent were included in the official count. For the 155 provisional ballots not included in the official count, the Registrar provided the following reasons:

Not registered to vote in San Diego County            121

3

| | |
|---|---|
| Listed a P.O. box as their residence address on their provisional ballot | 5 |
| Listed a business address as their residence address on their provisional ballot | 15 |
| Listed a nonexistent address as their residence address on their provisional ballot | 7 |
| Voted both a VBM ballot and a provisional ballot | 4 |
| Listed an out-of-county address as their residence | 1 |
| Failed to sign the provisional ballot envelope | 1 |
| Signature challenge was sustained | 1 |

Accordingly, 28 provisional ballots were excluded on the grounds that the envelopes listed an erroneous address (P.O. box, business, nonexistent, out of county) as the residence address. During ballot recount proceedings, information concerning all of the excluded provisional ballots from these categories had been reviewed or was available for review by the parties' and each campaign's representatives. Because Contestant selected only 10 of the ballots from these categories to include in her election contest, detailed information concerning the noncontested voters' individual circumstances was not admitted in evidence at trial.[2] Contestant's counsel stipulated at trial that "if there are similarly situated voters to the ones we have identified," then Contestant would agree those ballots should be counted.

---

[2] McCann introduced a declaration of Derrick W. Roach, who stated that (1) he observed the ballot recount, and (2) certain provisional ballots not counted based on "[non]verifiable residence address" were not selected by Contestant for inclusion in the election contest. Contestant filed evidentiary objections to Roach's statements on hearsay grounds, but the trial court did not rule on the objections. Even if Roach's declaration contains hearsay statements, it was properly admitted to support that a recount occurred and, as a general proposition, Contestant did not challenge all of the provisional ballots within a category.

4

The trial court denied the election contest and entered judgment for McCann. In a statement of decision, the court found that if it were to grant relief on the 10 provisional ballots, an "unconstitutional disparity" would be created between the 10 voters and other similarly situated voters. Furthermore, the court found that the Registrar acted within his discretion in excluding provisional ballots that did not list a residence address showing the individual's eligibility to vote in a Chula Vista election. The court cited sections 349 and 2000, which provide that an individual may only vote in the precinct where the voter is registered and resides. The court stated that other counties' procedures in counting provisional ballots did not establish that the Registrar's procedure was not rationally related to the government's interest in preserving the integrity of the election process and preventing voter fraud.

Finally, the court also found that the two VBM ballots were properly excluded from the Registrar's count because those ballots were cast by individuals who were not registered VBM voters, as required by mandatory provisions of the Elections Code. Contestant timely appealed.

DISCUSSION

I. *Guiding Principles*

In reviewing the trial court's findings and conclusions, we are guided by the following principles: " 'It is a primary principle of law as applied to election contests that it is the duty of the court to validate the election if possible. That is to say, the election must be held valid unless plainly illegal.' " (*Wilks v. Mouton* (1986) 42 Cal.3d 400, 404 (*Wilks*).) The contestant has the burden of proving a defect in the election by clear and

5

convincing evidence.  (*Ibid.*)  We are bound by the trial court's determination of the facts except to the extent that they are not supported by substantial evidence.  (*Ibid.*)  The evidence must be considered in the light most favorable to the prevailing party giving such party the benefit of every reasonable inference, and resolving all conflicts in favor of the judgment.  (*Id.* at p. 408, fn. 7.)

To the extent this appeal involves a constitutional challenge to an election law or regulation, we employ "a balancing test."  (*Field v. Bowen* (2011) 199 Cal.App.4th 346, 356.)  We weigh the character and magnitude of the burden the regulation imposes on the right to vote against the justification for that burden, and consider the extent to which the state's concerns make the burden necessary.  Regulations imposing severe burdens on voters' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review, and a state's important regulatory interests typically justify reasonable, nondiscriminatory restrictions.  (*Timmons v. Twin Cities Area New Party* (1997) 520 U.S. 351, 358; *Burdick v. Takushi* (1992) 504 U.S. 428, 434.)

## II.  *Contested Provisional Ballots*

### A

Contestant challenges the Registrar's exclusion of provisional voters' ballots that did not list a valid residence address on the provisional ballot envelope.  She argues that an individual proves his or her residence during the voter registration process and, thereafter, the Registrar must count the provisional ballot based only on signature comparisons under section 14310, subdivision (c)(1).  In essence, Contestant argues that

6

the Registrar may not impose an "additional" requirement of a proper residence address on the provisional ballot envelope for the vote to count.

As a general matter, a person is not entitled to vote in an election where he or she does not reside. (§ 2000; *Garrison v. Rourke* (1948) 32 Cal.2d 430, 441 [votes cast by nonresidents of the precinct were illegal].) " 'Residence' " for voting purposes means a person's domicile. (§ 349.) A person is not entitled to vote until he or she has properly registered to vote by completing an affidavit of registration setting forth his or her residence. (§§ 2000, 2102.) Thereafter, if voters move and wish to vote again, they are directed by the Legislature to reregister and/or notify pertinent elections officials of their change of address. (§ 2116 et seq.)

Under section 14311, voters who have moved within a county but not yet reregistered may go to the polling place of their new residence on Election Day and vote based on their new residence address. Such voters cast provisional ballots and are "reregistered" using their new address for future elections. (§ 14311, subds. (a) & (b).) In November 2014, the Registrar utilized these "fail-safe" provisions to reregister 387 Chula Vista voters at the new residence address written on their provisional ballot envelopes—counting those ballots even though the voters had not otherwise notified the Registrar of a change of address.

A provisional voter is "a voter claiming to be properly registered, but whose qualification or entitlement to vote cannot be immediately established upon examination of the index of registration for the precinct . . . ." (§ 14310.) As indicated above, a voter may have recently moved. Or, provisional voters might be voting at a precinct other than

7

their assigned precinct (and therefore their names will not be found on the unassigned precinct's roster) or they could be VBM voters who have lost or spoiled their mail ballots. They are "entitled to vote a provisional ballot" under section 14310. (*Id.*, subd. (a).) Once voted, the provisional ballot is sealed in a provisional ballot envelope, which "*shall be completed in the same manner as vote by mail envelopes*." (*Id.*, subd. (b), italics added.) A VBM envelope must contain the registered voter's residence address.[3] (§ 3011, subd. (a)(1)(3).) Next, the elections official compares the signatures on the provisional envelope and the voter's registration, rejecting the ballot if the "signatures do not compare" or "is not signed." (§ 14310, subd. (c)(1).) Finally, section 14310, subdivision (c)(2) states: "Provisional ballots shall *not* be included in any semiofficial or official canvass, except upon: (A) the elections official's establishing prior to the completion of the official canvass, from the records in his or her office, *the claimant's right to vote . . . .*" (Italics added.)

As to the 10 contested provisional ballots, in the spot on the provisional envelopes designated for a "CURRENT Residence Address," under the warnings, "Your ballot may NOT count if you do not completely fill out the information below" and "ALL INFORMATION MUST BE ENTERED BELOW," and right above the line for

---

3    As the Registrar explained, VBM ballots are mailed directly to the voter's residence (with instructions not to forward), and the voter is provided with a return envelope that has the voter's residence address preprinted on it. (See generally § 3010, subds. (a) & (b).) Consequently, the Registrar's office maintains a high degree of confidence that VBM voters have received and cast appropriate ballots for elections they are eligible to vote in. By its very nature, the same procedures are not available for provisional voting.

"PREVIOUS Residence Address," individuals had written a P.O. box, business address, or nonexistent address. The Registrar testified that his office was unable to "fail-safe" or reregister the voters for lack of a valid current residence address on the provisional ballot envelope or anywhere else, such as the precinct's roster. The Registrar did not count these ballots because the address provided was not a valid residential address establishing the person's right to vote in a Chula Vista election and, at the same time, called into question whether the person had moved.[4] (See *Hartman v. Kenyon* (1991) 227 Cal.App.3d 413, 423 [petition signers' decision to list their new addresses as their " 'residence address' " was probative of their intent to make that new residence their legal residence or domicile].)

Given the above circumstances, Contestant has not shown the Registrar's conduct to be "plainly illegal." (*Rideout v. City of Los Angeles* (1921) 185 Cal. 426, 430.) Nor was the Registrar's conduct irrational. (See *Mapstead v. Anchundo* (1998) 63 Cal.App.4th 246, 265-268 [discussing how residence address was critically tied to entitlement to sign referendum petition and upholding invalidation of signers who provided incomplete addresses].) Providing a current residence address is not burdensome and confirms a voter's eligibility to vote in a specific election. A current residence address is required of all voters regardless of how their votes are cast. (E.g.,

---

[4]     On appeal, McCann has requested we take judicial notice of a subsequent and rejected legislative bill related to the Registrar's practice, analysis and legislative history of the bill, and Chula Vista voter registration statistics. Contestant opposes. The documents are irrelevant or judicial notice is unnecessary. McCann's request for judicial notice is denied.

§§ 3011, subd. (a)(3) [VBM envelope shall contain residence address], 14216 [at polls, voter shall audibly announce and write name and residence address].) It is rationally related to the Registrar's responsibilities of providing appropriate ballots based on residence and reregistering voters who have moved. For the Election, there were 23 ballot variations available to voters depending on where they resided in Chula Vista.

Furthermore, the record supports that the Registrar employs various efforts to count provisional votes when possible, but was also justified in wishing to maintain an orderly election process and prevent the dilution of votes by those who are not eligible or registered to vote. The Registrar properly did not count numerous illegal provisional votes, such as those cast by unregistered voters, and double votes, i.e., individuals who attempted to cast both VBM and provisional ballots. Contestant's "signature comparison only" rule is overly simplistic and does not address a number of recurring scenarios. Thus, the Registrar may implement reasonable, uniform processes to fulfill his statutory duties relating to processing and counting ballots.

The Registrar also correctly excluded Ryan M.'s ballot on the ground that he was not registered to vote. Ryan M.'s registration form listed only a business address. As discussed, *ante*, a person must be properly registered with a residence address in order to vote. Section 349 provides that a person's residence is his or her domicile, which is defined as that place in which the person's habitation is fixed, in which the person intends to remain, and to which the person intends to return after temporary absences. (§ 349, subds. (a) & (b).) Since Ryan M. never provided the Registrar with his place of residence, *Collier v. Menzel* (1985) 176 Cal.App.3d 24, 31 is entirely distinguishable. In

10

*Collier*, appellants established they were residents of, and domiciled in, a public park. (*Ibid.*) The Registrar did not err by excluding Ryan M.'s ballot from the official count.

Contestant points out that the Registrar did not comply with section 14310, subdivision (a)(2) and (3), which requires that provisional voters be provided with "written instructions regarding the process and procedures for casting the provisional ballot, and a written affirmation regarding the voter's registration and eligibility to vote." She argues that signed written affirmations would have obviated the need for the Registrar to exclude ballots based on lack of residence address. The Registrar acknowledges that the exact language required by these provisions was missing from the contested provisional ballots.

Without doubt, section 14310, subdivision (a)(2) and (3) contain explicit requirements for provisional ballots. Nevertheless, we are not persuaded that the absent language changes the result in this case. For example, the record shows how voters at any given time will sign affirmations under penalty of perjury that they "have not voted previously in this election," yet the Registrar's office ultimately determines that they have in fact voted twice and excludes one or both of their ballots. As the Registrar credibly testified, some people do not appear to know whether they are properly registered and/or eligible to vote in a certain election, and the Registrar's office uses voters' information to help make that determination.

Contestant relies on *Wilks*, *supra*, 42 Cal.3d at page 403, for the proposition that the Registrar was barred from considering residence addresses as a reason for excluding a provisional voter's ballot. In *Wilks*, 16 absentee ballots were challenged on the grounds

11

that they were returned in envelopes where the residence address did not match the address on the voter's affidavit of registration. (*Id.* at p. 413.) The Court summarily stated: "We agree with the trial court that section 1015 requires only that the elections official compare the signature on the identification envelope with the signature on the affidavit of registration; a comparison of addresses is not required."[5] (*Ibid.*) The Court went on to discuss that there had been "no fraud, coercion or tampering in connection with any of the challenged ballots." (*Ibid.*)

While *Wilks* concluded that an elections official *must* compare the signature on a VBM ballot to the signature on a voter's affidavit of registration for purposes of deciding whether the ballot should be counted, the case does not discuss whether an elections official *may* request or use a voter's current residence address for the same or a different purpose. (*Wilks, supra,* 42 Cal.3d at p. 413; see also *Escalante v. City of Hermosa Beach* (1987) 195 Cal.App.3d 1009, 1024-1025 [ballot properly rejected where signature on ballot did not appear to match registration signature and residence address on the ballot envelope differed from the residence address in the registrar's records].) Indeed, *Wilks* and *Escalante* both implicitly accepted that the voter's residence address belonged on the ballot envelope for some purpose. Neither case involved provisional ballots where the written address was a P.O. box, business address, or nonexistent address. As we have

---

5      Section 1015 covered absentee ballots, which is the former iteration of current section 3019 for VBM ballots. (§ 3019, Historical and Statutory Notes, former § 1015, Stats. 1976, ch. 1275, § 18, amended Stats. 1982, ch. 428, § 13.6.)

12

discussed, if a provisional voter wrote a valid residence address on his or her envelope in November 2014, the ballot was counted by the Registrar.

Similarly, Contestant's reliance on *Walters v. Weed* (1988) 45 Cal.3d 1, is misplaced. In *Walters*, a number of students had lived and registered to vote on a university campus. (*Id.* at p. 4.) When they returned to school in the autumn of 1983, many were unable or chose not to live on campus, were living in temporary residences, and had not obtained off-campus housing where they intended to remain, i.e., a new domicile. (*Ibid.*) As a result, they voted in their former campus precincts. (*Ibid.*) Rather than entirely disenfranchise these students, the Court held that they maintained their right to vote on campus until and unless they acquired a new domicile. (*Id.* at pp. 13-14.) Provisional voting was not available at the time of the election in *Walters*; if it had been available, the issue of disenfranchising a group of students would likely not have arisen.

Here, the issue before the trial court was not to ascertain the provisional voters' residences for voting purposes but, rather, whether the Registrar acted within his discretion when he encountered provisional voters who did not provide a valid current residence yet may have moved. Unlike in *Walters* where the students had no domicile, all of the provisional voters in this case were domiciled somewhere. Contestant proposes that the Registrar should have considered where the voters' families lived, where they paid income taxes, and "any other evidence" of the voters' intent to remain at their domicile, prior to excluding their ballots. Given the time frame for certifying election results, volume of ballots, and administrative burden of processing them, Contestant's proposal is unwieldy and impractical. For all the reasons we have discussed, the

13

Registrar was not prohibited from considering a nonverifiable address as a reason for not counting a provisional voter's ballot.

B

We briefly address Contestant's equal protection arguments. Citing *Bush v. Gore* (2000) 531 U.S. 98, Contestant contends that the Registrar's conduct violated the Equal Protection Clause because different counties of California are counting provisional votes differently. The Registrar and McCann respond that equal protection in the voting context refers to similarly situated voters within the same jurisdiction or electoral unit, which would be Chula Vista. We agree with the Registrar and McCann.

The contested election was for a seat on the Chula Vista City Council. It is undisputed that similarly situated voters in Chula Vista were subjected to the same procedures and, conversely, not arbitrarily or disparately deprived of the right to vote for a city councilmember. Even if the Orange County Registrar of Voters adopted a different procedure for counting provisional ballots, Orange County voters did not vote in the Chula Vista City Council election. The fact that the California Association of Clerks and Election Officials apparently formed a subcommittee several years ago and drafted some "discussion points" concerning provisional balloting issues, also does not establish a violation of equal protection in this election contest. Based on the record before us, Contestant's challenge to the election on equal protection grounds was properly denied. (See *Green v. City of Tucson* (9th Cir. 2003) 340 F.3d 891, 900 [equal protection principles concern qualified voters within the electoral unit, i.e., "the governmental unit holding the election, be it a school district, a city or a state"].)

14

The trial court properly denied Contestant's election contest as to the challenged provisional ballots. We need not address the trial court's finding that an "unconstitutional disparity" would be created among similarly situated Chula Vista voters if relief was granted to Contestant.

### III. *Contested Vote-by-mail Ballots*

Contestant also challenges the Registrar's exclusion of two VBM ballots, contending that the Registrar elevates form over substance and/or did not provide its rationale for not counting the two ballots. The Registrar responds that the two VBM ballots were cast by individuals who were not registered as VBM voters, which is an undisputed fact.

The two VBM ballots were illegal votes. Illegal votes include those "not entitled to be counted because not cast in the manner provided by law." (*Bush v. Head* (1908) 154 Cal. 277, 281-282; *Hardeman v. Thomas* (1989) 208 Cal.App.3d 153, 168.) By law, a voter must apply to be a VBM voter in order to vote a VBM ballot. (§§ 3201, 3000 et seq.) If a person is returning a household member's VBM ballot, he or she must be properly designated to so. (§ 3017, subd. (a) ["a vote by mail voter who is unable to return the ballot may designate his or her spouse, child, parent . . . as the vote by mail voter to return the ballot to the elections official"].) These provisions are mandatory. (*Id.*, subd. (d).)

Contestant did not show that the two voters were registered VBM voters returning their own ballots or designated to return household members' VBM ballots and, thus, the ballots were correctly excluded. (See *Stebbins v. Gonzales* (1992) 3 Cal.App.4th 1138,

15

1143-1144.)  The trial court properly denied Contestant's election contest as to the challenged VBM ballots.

## DISPOSITION

The judgment is affirmed.  McCann and the Registrar are entitled to recover costs on appeal.


MCCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

Filed 1/11/16

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AURORA CLARK, | D067918 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2015-00000121-CU-PT-CTL) |
| JOHN MCCANN, | |
| Defendant and Respondent; | |
| MICHAEL VU, as Registrar of Voters, etc., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Real Party in Interest and Respondent. | |

THE COURT:

The opinion in this case filed December 24, 2015, was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to: All parties