TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 18-202 |
|  | : |  |
| of | : | April 19, 2019 |
|  | : |  |
| XAVIER BECERRA | : |  |
| Attorney General | : |  |
|  | : |  |
| LAWRENCE M. DANIELS | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____


Proposed relators EULALIO GOMEZ, THOMAS TRESTER, MONICA DIAZ, and JERI NOWAK have requested leave to sue proposed defendants RILEY TALFORD, JOHN ROBINSON, and JOHN ADAMS in quo warranto to remove them as trustees of the Board of Retirement of the Fresno County Employee Retirement Association on the ground that their elections resulted from violations of election procedures.

CONCLUSION

Leave to sue in quo warranto is GRANTED to determine whether the elections of proposed defendants RILEY TALFORD and JOHN ROBINSON as trustees of the Board of Retirement of the Fresno County Employee Retirement Association resulted from violations of election procedures. Leave to sue in quo warranto is DENIED as to proposed defendant JOHN ADAMS because his challenged term of office has expired.

1

18-202

ANALYSIS

Retirement boards for public employees have plenary authority and the fiduciary responsibility to administer the employees' retirement systems.[1] Pursuant to the California Constitution, retirement board trustees must "administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries."[2] The County Employees Retirement Law of 1937 permits a county to establish and operate a retirement plan, and to provide disability retirements, for the county's employees.[3]

Under this law, the County of Fresno has established the Fresno County Employees' Retirement Association, governed by a Board of Retirement (Board).[4] The Board's duties "consist primarily of protecting the assets of the retirement system through investment decisions and through actuarial valuations and adjustments; calculating benefits; delivering benefits and services to members and their beneficiaries; and deciding individual members' claims for benefits."[5] The Board consists of nine members: the county treasurer, four appointed members, two elected general members, one elected safety member, and one elected retired member.[6] Safety members are classified as "those employees who are in positions in which the principal duties consist of either active law enforcement or active fire suppression."[7] General members are "all employees not classified as Safety

---

[1] Cal. Const., art. XVI, § 17; *Flethez v. San Bernardino County Employees Retirement Assn.* (2017) 2 Cal.5th 630, 635 (*Flethez*).

[2] Cal. Const., art. XVI, § 17, subd. (a).

[3] Gov. Code, § 31450 et seq.; *Flethez, supra*, 2 Cal.5th at p. 635; *Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn.* (2016) 2 Cal.App.5th 674, 680.

[4] Gov. Code, §§ 31520, 31520.1, 31595; Fresno County Employees' Retirement Assn. Bd. of Retirement Charter (as amended Oct. 7, 2015) ("FCERA Charter"), available at https://www2.co.fresno.ca.us/9200/Attachments/policies/20151007-6B-BoardCharters-1dRaCharter.pdf.

[5] 89 Ops.Cal.Atty.Gen. 152, 156 (2006), fn. omitted; see Gov. Code, §§ 31451, 31453, 31453.5, 31530-31536, 31580-31619; FCERA Charter, *supra*, pt. 1, § 1.

[6] Gov. Code, § 31520.1, subd. (a).

[7] Fresno County Employees' Retirement Assoc. Handbook (2017) ("FCERA Handbook"), p. 8, available at http://www2.co.fresno.ca.us/9200/attachments/handbook/activehandbook.pdf; see Gov. Code, § 31469.3.

members."[8]

The two Board trustee positions representing general members (trustee positions 2 and 3) and the one Board trustee position representing safety members (trustee position 7) were up for election on November 16, 2017. In this election, the three proposed defendants (Defendants Riley Talford, John Adams, and John Robinson) prevailed over the four proposed relators (Relators Eulalio Gomez, Thomas Trester, Monica Diaz, and Jeri Nowak). For trustee position 2, Defendant Talford received 322 votes, Robert Bash (not a party in this matter) received 287 votes, Relator Nowak received 230 votes, and Bobby Bloyed (not a party in this matter) received 108. For trustee position 3, Defendant Adams received 348 votes, Relator Trester received 347 votes, and Relator Diaz received 243. For trustee position 7, Defendant Robinson received 180 votes and Relator Gomez received 177. The county clerk certified these results.

On December 19, 2017, after the election, Relators brought an election contest in Fresno County Superior Court challenging the election results.[9] On February 2, 2018, the court dismissed the case on the basis that the statute authorizing election contests did not encompass elections for county retirement boards.[10] On April 3, 2018, Relators appealed this dismissal to the Fifth Appellate District of the California Court of Appeal. On January 11, 2019, upon Relators' request, the court dismissed the appeal.

Meanwhile, between the superior court and Court of Appeal dismissals of the election contest case, Relators applied to the Attorney General to sue Defendants, on the same factual grounds, via a quo warranto legal theory. These grounds are that (1) 56 votes were counted from 28 voters who returned envelopes containing both a general member ballot and a safety ballot; (2) some completed ballots were delivered in bulk, rather than individually; and (3) Defendants unlawfully used county resources for political campaigning.

For the reasons that follow, we now find that Relators' well-supported grounds for relief warrant granting them leave to sue in quo warranto against Defendants Talford and Robinson, whose challenged terms will expire on December 31, 2020. We will deny Relators leave to sue against Defendant Adams, however, because the electoral term they challenge as to him expired on December 31, 2018.

---

[8] FCERA Handbook, *supra*, at p. 8; see Gov. Code, § 31499.11, subd. (a).

[9] See Elec. Code, § 16000 et seq. (election contests). Defendants began serving their terms as trustees on January 1, 2018.

[10] See Elec. Code, § 16100.

3

**Applicable Law on Quo Warranto**

Quo warranto is a means of challenging whether a person unlawfully holds a public office.[11] Before initiating a quo warranto proceeding in superior court, a person must obtain leave to sue from the Attorney General against a person "who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[12] In order to grant a quo warranto application, we must find that (1) quo warranto is the proper remedy to resolve an issue presented, (2) the application presents a substantial issue of law or fact appropriate for judicial resolution, and (3) granting the application would serve the overall public interest.[13] We address these three requirements in turn.

**1.      Is Quo Warranto a Proper Remedy?**

For quo warranto to be an available remedy, Defendants must be holding public offices, and Relators must be challenging Defendants' titles to these public offices.[14] A public office is a governmental position that is created or authorized by law with a continuing and permanent tenure in which the incumbent performs a public function and exercises some sovereign powers of government.[15]

An application of this test convinces us that the position of trustee of a county retirement board is a public office. First, the position is governmental because the county and its subsidiary governing bodies are part of our state's governmental system, and because the Board uses taxpayer funds to perform its obligations.[16] Second, the position is created or authorized by law because the state Constitution has authorized, and the Legislature has specifically created, this position.[17] Third, the position has a continuing and permanent tenure because the Board's life is perpetual and its elected members serve

---

[11] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 165 (1993).

[12] Code Civ. Proc., § 803; Cal. Code Regs., tit. 11, § 1.

[13] 96 Ops.Cal.Atty.Gen. 36, 40 (2013); 95 Ops.Cal.Atty.Gen. 50, 54 (2012).

[14] See 96 Ops.Cal.Atty.Gen., *supra*, at pp. 41-45; 73 Ops.Cal.Atty.Gen. 197, 200-201 (1990).

[15] *Moore v. Panish* (1982) 32 Cal.3d 535, 545; *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 639-640; 100 Ops.Cal.Atty.Gen. 29, 30 (2017).

[16] Gov. Code, §§ 23000-23005, 31451, 31580-31590.

[17] Cal. Const., art. XVI, § 17; Gov. Code, §§ 31520, 31520.1, subd. (a).

regular (three-year) terms of office.[18]   Fourth, the Board performs a public function, the Fresno County Board of Supervisors having transferred to it the duty to provide for the county employees' retirement.[19]  By this delegation of power, the Board must "administer the [county retirement] system in a manner that will assure prompt delivery of benefits and related services to the [county] participants and their beneficiaries."[20]

Lastly, the Board, through its trustees, exercises some sovereign powers of government using its constitutionally-provided "plenary authority" over the system.[21]   It possesses broad discretionary authority regarding investments of monies, and has the power to adjust benefits, correct errors or omissions in benefits, and audit a county or district to determine the accuracy of benefits.[22]  The Board further exercises "quasi-judicial powers"[23] by ruling on applications for retirement benefits and disability retirements, and determining factual issues, such as whether a member is permanently incapacitated and whether the disability is service-connected;[24] by appointing referees for hearings;[25] and by exercising subpoena powers and administering oaths to witnesses.[26]  The Board is also empowered to formulate regulations, which become effective upon approval by the Fresno County Board of Supervisors.[27]   The Board must comply with the Brown Act's open-

---

[18] Gov. Code, §§ 31520, 31520.1, 31595.

[19] Gov. Code, § 31500; *Bd. of Retirement v. Santa Barbara County Grand Jury* (1997) 58 Cal.App.4th 1185, 1191.

[20] Cal. Const., art. XVI, § 17, subd. (a).

[21] *Ibid.*

[22] Gov. Code, §§ 31537, 31538, 31539, 31541, 31595; FCERA Charter, *supra*, pts. I, II.

[23] *Rau v. Sacramento County Retirement Bd.* (1966) 247 Cal.App.2d 234, 236 (a county "retirement board is a local administrative body vested with quasi-judicial powers"); see also *Le Strange v. City of Berkeley* (1962) 210 Cal.App.2d 313, 323 (a fire pension board of a city is quasi-judicial because of its "fact finding power and the concomitant requirement to make a determination or adjudication of fact in connection with matters properly submitted to it after a hearing").

[24] Gov. Code, §§ 32725, 32725.7, 31725.8; *Flethez*, *supra*, 2 Cal.5th at p. 636.

[25] Gov. Code, § 31533.

[26] Gov. Code, § 31535.

[27] Gov. Code, § 31525.

meeting rules because a county retirement board is a "local agency" for this purpose.[28]  And significantly, the Legislature in 2012 evidenced its belief retirement board trustees hold public offices (in the first instance) when it specifically exempted them from the legal prohibition against holding incompatible public offices.[29]  We find that Defendants hold public offices for quo warranto purposes as well.

Next, we turn to whether Relators are challenging Defendants' titles to these public offices.  On this point, it is well established that a party may challenge an election by means of an election contest or a quo warranto complaint.[30]  Under a quo warranto theory, if the

---

[28] *Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 824; see generally Gov. Code, § 54950 et seq. (the Ralph M. Brown Act); see also *Bd. of Retirement of Kern County Employees' Retirement Assn. v. Bellino* (2005) 126 Cal.App.4th 781, 790-792 (a county retirement association is a "local agency" for purposes of Government Code section 53227's prohibition against employees of a local agency serving on its board); *Bd. of Retirement v. Santa Barbara County Grand Jury, supra,* 58 Cal.App.4th at p. 1195 (a county retirement association is a "local government agency" for purposes of the grand jury's exercise of investigative and subpoena powers under Penal Code sections 925, 933, and 939.2); and see Cal. Code Regs., tit. 2, § 18700.3, subd. (b)(2) (within the meaning of the financial-disclosure provisions of the Political Reform Act of 1974, "public officials who manage public investments" under Government Code section 87200 include members of retirement boards); *Lexin v. Super. Ct.* (2010) 47 Cal.4th 1050, 1084 (city employees of the City of San Diego acted "[i]n their official capacities" within the meaning of Government Code section 1090 in contracting with the city as members of its retirement board).

[29] Stats. 2002, ch. 289, § 1 (Sen. Bill No. 1746) (the Legislature intends that "appropriate legal counsel . . . would cure any potential clash between the two offices as implied by the doctrine of incompatibility of public offices"); see generally Gov. Code, § 1099 (describing the rule against simultaneously holding incompatible public offices).  In a similar vein, we have found that the incompatible-offices rule did not prevent a county treasurer from also serving on the county retirement board, because the Legislature required the county treasurer to serve in this dual capacity.  (89 Ops.Cal.Atty.Gen., *supra,* at pp. 152, 158; see also Gov. Code, § 31520.1, subd. (a) [referring to the three-year "*terms of office* of the elected, appointed, and alternate seventh members" of the county retirement board and stating that the "eighth and ninth members shall take *office* as soon as practicable," italics added]; 4 Ops.Cal.Atty.Gen. 234, 234 (1944) [referring to a board of retirement member as serving a "term of office"].)

[30] *People ex rel. Budd v. Holden* (1865) 28 Cal. 123, 129; *Salazar v. City of Montebello* (1987) 190 Cal.App.3d 953, 957; 86 Ops.Cal.Atty.Gen. 82, 84, fn. 1 (2003); 74

18-202

election was unlawful, a court may find that the elected official has no legal right to occupy the office.[31]

Defendants Talford and Adams argue that even were quo warranto otherwise appropriate, this same matter was already litigated and dismissed with prejudice. But it was an election contest, not a quo warranto action, that the superior court dismissed with prejudice. The issues and claims presented in the election contest were not resolved on the merits; instead, the court determined that an election contest was not a statutorily authorized action to overturn an election of a trustee of a county retirement board.[32] As a result, the re-litigation doctrines of collateral estoppel (issue preclusion) and res judicata (claim preclusion) do not apply.[33]

## 2.    Is a Substantial Question of Law or Fact Presented?

Having found that quo warranto is a proper remedy in these circumstances, we turn to the question whether Relators have raised a substantial question of fact or law warranting judicial resolution. In this inquiry, it is not our role to resolve the merits of the controversy,

---

Ops.Cal.Atty.Gen. 31, 32 (1991); see, e.g., *Bradley v. Perrodin* (2003) 106 Cal.App.4th 1153, 1173; *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 919-920, 932-934.

[31] See *People v. City of San Buenaventura* (1931) 213 Cal. 637, 638-642, overruled on another ground in *Costa v. Superior Court* (2006) 37 Cal.4th 986, 1014, fn. 20; *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1301; 96 Ops.Cal.Atty.Gen. 48, 48-49 (2013); 96 Ops.Cal.Atty.Gen., *supra*, at p. 39; see also 101 Ops.Cal.Atty.Gen. 24, 28 (2018) (quo warranto is an appropriate means to challenge an appointment procedure).

[32] See Elec. Code, § 16100 ("Any elector of a county, city, or of any political subdivision of either may contest any election held therein"). We take no position on the correctness of the court's decision.

[33] *People v. Sims* (1982) 32 Cal.3d 468, 484; *Planning and Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 226. In another case, a pending election contest caused us to decline to grant a quo warranto application contesting the same election. (74 Ops.Cal.Atty.Gen., *supra*, at p. 32 [declining to grant an application to sue in quo warranto because the challenged election already was the subject of an election contest and a civil complaint for declaratory and injunctive relief then pending in superior court].) Here, however, the Court of Appeal dismissed the appeal of the superior court's election contest denial, and we are not aware of any related litigation.

18-202

but only to decide if a substantial question is presented.[34]

Relators first claim that the county clerk erroneously counted 56 ballots from 28 persons who submitted envelopes containing two ballots each—a safety member ballot and a general member ballot.[35] They argue that each of these 28 envelopes could properly contain only one ballot—a safety member ballot or a general member ballot. As mentioned, all members of the county retirement system are general members or safety members; a member may not retain both classifications at the same time.[36] For retirement board elections, the Legislature has prescribed that general members elect the general member trustees, and that safety members elect the safety member trustee.[37] Further, under Fresno County's election regulations,[38] "[i]f the Fresno County Clerk determines that multiple ballots have been received from any voter, none of their ballots will be opened and counted."[39] According to this regulation and state law, it appears the 56 votes from the 28 voters should have been excluded from the count, potentially deciding the three contests at issue, which had a margin between first and second place of 35 votes, one vote, and three votes.[40]

---

[34] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879; 95 Ops.Cal.Atty.Gen., *supra*, at p. 51.

[35] See Fresno County Clerk and Registrar of Voters, Off. Canvass of Elections, Bd. of Retirement of the Fresno County Employees' Retirement Assn. Election (Nov. 16, 2017) ("Canvass of Election"), p. 1 (where the county clerk states that these ballots were included in the canvass of votes), available at https://www.co.fresno.ca.us/home/showdocument?id =20291.

[36] Gov. Code, §§ 31469.3, 31499.11, subd. (a), 31560; FCERA Handbook, *supra*, at p. 8.

[37] Gov. Code, § 31520.1, subd. (a).

[38] A county's regulations for its retirement board must include provisions "[f]or the election of officers . . . ." (Gov. Code, § 31526, subd. (a).)

[39] Fresno County Bd. of Supervisors, Res. 15-586 (Dec. 8, 2015) pp. 8-9; see also *id.* at p. 8 ("multiple voted ballots that are in one official return envelope shall be rejected," comma omitted).

[40] Cf. Elec. Code, § 16100, subd. (f) (a ground for an election contest is "[t]hat the precinct board in conducting the election or in canvassing the returns, made errors sufficient to change the result of the election as to any person who has been declared elected"). We do not find it dispositive that Relators Nowak and Diaz, who ended in third place in their elections, finished behind the winners by 92 and 105 votes, respectively. To sue in quo warranto, there is no requirement that the defendant's allegedly invalid title

8

Secondly, Relators contend that Defendants Talford and Adams organized county employees to act as "ballot captains" by collecting and delivering ballots and reporting these completed ballots to their campaigns. In support of this contention, Relators offer detailed documentary evidence, including declarations, office e-mails, and footage from security cameras. This evidence allegedly shows people collecting other members' ballots, one individual delivering "at least five handfuls of ballots in bulk," and others delivering multiple ballots to the ballot drop-box at the clerk's office.

Relators further allege as part of their second claim that on October 17, 2017, before the election, "supervising Fresno County representatives" directed Defendant Talford not to use any county time or systems to conduct retirement-association business but that thereafter, Talford's ballot captains continued their collection and delivery of ballots from other members during business hours. An alleged e-mail from Talford's supervisor subsequently admonished Talford for collecting a ballot envelope from a county janitor as Talford stood outside another supervisor's office on November 1, 2017.

The Fresno County rules for collecting and returning the Board-election ballots specify that "[v]oted ballots shall be returned, each in its official return envelope, by United States Postal Service, over the counter, or by County messenger, to the Fresno County Clerk/Registrar of Voters Office not later than 5:00 p.m. on the date of the election."[41] These local election regulations further dictate, "Bulk delivery of voted ballots, defined here as over the counter delivery of more than one ballot by a single individual, will not be accepted by the Fresno County Clerk/Registrar of Voters office."[42] Nothing recorded in the clerk's official canvass of votes reflects that any ballots were rejected because they were part of a bulk delivery.[43] If it is true that Defendants Talford and Adams directed the collection and delivery of voters' ballots, in violation of election procedures, these ballots were more likely to have been cast in their favor, in which case the ballots may have affected the outcomes of the narrowly decided contests, potentially warranting Defendants' removal from the Board.[44]

---

deprived the relator of office.

[41] Fresno County Bd. of Supervisors, Res. 15-586, *supra*, at p. 8.

[42] *Ibid.*

[43] Canvass of Election, *supra*, at pp. 1-5.

[44] Cf. Elec. Code, § 16100, subd. (d) (a ground for an election contest is "[t]hat illegal votes were cast"); *Gooch v. Hendrix* (1993) 5 Cal.4th 266, 271, 279-284 (election contest granted based on a political association's collection of absentee ballots, which rendered them "illegal votes" in violation of former Elections Code section 1013). These ballots

Third, Relators claim that Defendants improperly used county resources to campaign for election. To support this claim, Relators submit witness declarations and other documentary evidence indicating that Defendants Talford and Adams, in addition to organizing ballot captains to collect and deliver ballots, stationed tables on county property and at a county health fair (where they gave away campaign flyers and pizza), lobbied county employees, and "allowed entry into a raffle in exchange for written commitment pledges to vote for Defendants Talford and Adams." Regarding Defendant Robinson, Relators allege that his "supporters used County-issued computers and County-issued email addresses to actively campaign for Defendant Robinson during business hours," utilizing mass e-mails in favor of him and against Relator Gomez. If this alleged conduct occurred, it likely ran afoul of laws regarding political activities in the course of public employment,[45] and may also have had an impact on the close trustee elections.[46]

---

also could have affected the outcome of Defendant Robinson's election, which was decided by only three votes. (See *Gooch v. Hendrix*, *supra*, 5 Cal.4th at p. 282 [election vacated where "illegal votes cannot be attributed to any one candidate, but nevertheless 'appear' sufficient in number or effect to have altered the outcome of the election"].)

[45] See Gov. Code, §§ 3201 ("political activities of public employees are of significant statewide concern"), 3202 (this chapter applies to officers of local agencies), 3204 (no one seeking office in a local agency may attempt to use his or her authority to influence a person in securing a vote in exchange for consideration), 3206 ("No officer or employee of a local agency shall participate in political activities of any kind while in uniform"), 3207 (a local agency may establish regulations restricting officers and employees from engaging in political activity during working hours or on the premises of the local agency), 8314, subd. (a) (prohibiting the use of public resources for campaign activities unless authorized by law); Fresno County Ord. No. 3.08.110, §§ A.1 (a county officer or employee may not engage in any political activity in connection with any election during his or her hours of employment), A.2 (a county officer or employee may not engage in any political activity in connection with any election while on county premises or using county property); Fresno County Bd. of Supervisors, Admin. Policy No. 71 ("Government assets, including money, grant funds, paid staff time, equipment and supplies, facilities or any other government asset shall not be used for political campaigns of any type" and "Department Heads shall be held responsible for ensuring that government assets within their control are not used to advocate for or against any matter or person that has qualified for the ballot").

[46] Whether Defendants' alleged campaign violations, standing alone, would invalidate Defendants' title to office is another question that a court could resolve, if necessary. (Cf. Elec. Code, §§ 16100, subd. (c) [a ground for an election contest is "[t]hat the defendant has given to any elector or member of a precinct board any bribe or reward, or has offered any bribe or reward for the purpose of procuring his election"], 18521, subd. (a) [it is a

10

We find that Relators' factual allegations are well-supported and that their legal claims present viable grounds to attack the validity of Defendants' elections. While we do not purport to resolve these allegations, or determine their legal effect,[47] we believe Relators have presented substantial questions of fact or law that warrant a judicial resolution.

### 3. Would It Serve the Public Interest to Grant the Quo Warranto Application?

Absent countervailing circumstances, we view the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant granting leave to sue in quo warranto.[48]  Here, too, it is uncontested that the practice of "ballot captains" is a longstanding one in elections to this retirement board; thus, judicially resolving the parties' dispute would have the additional salutary effect of clarifying whether this practice is proper in future Board elections.[49]

---

crime to give any gift or other consideration to a person before an election in exchange for the person's agreement to vote for a particular candidate].)  Here, we conclude only that in conjunction with the two claims of balloting error, Relators' allegations of unlawful electioneering would merit presentation in quo warranto.

[47] A quo warranto action or an election contest may result in overturning an election. (*Salazar v. City of Montebello*, *supra*, 190 Cal.App.3d at p. 957; 86 Ops.Cal.Atty.Gen., *supra*, at p. 84, fn. 1.)  The traditional remedy in a quo warranto action against a public official is removal from office.  (See *People v. Craig* (1937) 9 Cal.2d 615, 616; *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 695-696; 82 Ops.Cal.Atty.Gen. 219, 222 (1999).)  In an election contest, judicial remedies include recounting the ballots, annulling and setting aside the election, and even declaring the contestant elected.  (Elec. Code, §§ 16601, 16603, 16701, 16702, 16703; *Gooch v. Hendrix*, *supra*, 5 Cal.4th at pp. 276, 282; *Stebbins v. Gonzales* (1992) 3 Cal.App.4th 1138, 1142-1143.)  We express no view on which such remedies would be available or appropriate here.  (See, e.g., *People ex rel. Budd v. Holden*, *supra*, 28 Cal. at p. 129 [in a quo warranto action disputing the legality of an election, the People "have a prerogative right to enforce their will when it has been so expressed (through the ballot-box) by excluding usurpers and putting in power such as have been chosen by themselves"].)

[48] 98 Ops.Cal.Atty.Gen. 94, 101 (2015).

[49] See 97 Ops.Cal.Atty.Gen. 12, 19 (2014).

11

Defendants nonetheless assert, as a countervailing circumstance, that Relators should have availed themselves of another remedy afforded by local regulation. To wit, Defendants point to a county resolution that provides, "Prior to opening the official envelopes containing voted ballots, any candidate may challenge the validity of any ballot based on good cause, and in the event of any such challenge, the Fresno County Clerk/Registrar of Voters shall, consistent with these procedures, decide the validity of such ballot so challenged."[50]

In our estimation, however, none of the alleged errors raised in Relators' application could have been raised under this local election procedure.[51] Exhaustion of an administrative remedy is not required "where it would be futile to pursue such remedy."[52] Relators could not have ascertained that 28 envelopes contained two ballots until after they were opened, not "[p]rior to opening." Besides, in canvassing the election results, the clerk reported this double-voting yet found she did not have the "jurisdiction" to determine its "legal effect."[53] As to Relators' other two claims—the bulk delivery of ballots and the improper use of county resources for campaigning—neither one could be tied to a particular ballot when the envelopes were opened, and thus it appears that the clerk could not have afforded any relief. Moreover, we see nothing suggesting this local procedure was intended to be exclusive or mandatory, such that it would preclude a post-election quo warranto challenge, particularly as the county resolution provides that a candidate "may" contest the ballot's validity to the registrar, not that the candidate "shall" or "must" do so.[54]

---

[50] Fresno County Bd. of Supervisors, Res. 15-586, *supra*, at p. 9.

[51] We also reject Defendant Robinson's argument that Relators should have sought relief via writ of mandamus or injunction rather than quo warranto. The California Supreme Court has explained that "questions concerning the appointment or election of public officers" must be pursued by "statutory remedy" or "quo warranto," not by a suit for an injunction. (*Barendt v. McCarthy* (1911) 160 Cal. 680, 683, internal quotation marks omitted.) Similarly, the Court of Appeal has held that quo warranto, not mandamus, is a proper vehicle to try title to office based on an invalid election. (*Bd. of Supervisors of Nevada County v. Super. Ct., Nevada County* (1957) 150 Cal.App.2d 618, 619-620.)

[52] *Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1015, internal quotation marks omitted.

[53] Canvass of Election, *supra*, at p. 1.

[54] See *Tarrant Bell Property, LLC v. Super. Ct.* (2011) 51 Cal.4th 538, 542 (ordinarily, "may" is construed as permissive and "shall" as mandatory); *In re Kler* (2010) 188 Cal.App.4th 1399, 1402 ("'must' is mandatory").

12

Having determined that quo warranto is an appropriate remedy here, and that substantial issues of fact and law warrant a judicial resolution of this election controversy, and that the public interest would be served by such a judicial resolution, we must still consider separately each proposed defendant's individual circumstances. Although the factual allegations made in this application involve all three proposed defendants, "[w]e have repeatedly declined to grant leave to sue in a quo warranto proceeding where the alleged unlawful term of office has expired, or the question of unlawfulness has become moot by subsequent events."[55]

As to Defendants Talford and Robinson, a quo warranto action seeking their removal from office based on their disputed elections continues to be viable because the terms of office resulting from those elections do not conclude until December 31, 2020.[56]

However, as to Defendant Adams, we are informed that the term resulting from his disputed election ended on December 31, 2018 (while the now-dismissed election contest appeal was pending). Because Defendant Adams's challenged term has now expired, we must deny the quo warranto application as to him.

Accordingly, for the reasons discussed above, Relators' application for leave to sue in quo warranto is GRANTED as to Defendants Talford and Robinson and DENIED as to Defendant Adams.

*****

---

[55] 87 Ops.Cal.Atty.Gen. 176, 179 (2004), citing 87 Ops.Cal.Atty.Gen. 30, 34-35 (2004), 84 Ops.Cal.Atty.Gen. 206, 207 (2001), 72 Ops.Cal.Atty.Gen. 63, 71 (1989), and 25 Ops.Cal.Atty.Gen. 223, 224 (1955).

[56] We note that a public official's actions prior to his or her ouster by quo warranto remain valid and binding if done within the scope and apparent authority of office. (*In re Redevelopment Plan for Bunker Hill Urban Renewal Project 1B* (1964) 61 Cal.2d 21, 42; *McPhee v. Reclamation Dist. No. 765* (1911) 161 Cal. 566, 572; 96 Ops.Cal.Atty.Gen., *supra*, at p. 44, fn. 46; 82 Ops.Cal.Atty.Gen., *supra*, at p. 223, fn. 3.)

18-202